Steven R. SNEED and Donna H. Sneed, Plaintiffs,

v.

BENEFICIAL FINANCE COMPANY OF HAWAII, Defendant.

Civ. No. 75–0197.

United States District Court, D. Hawaii.

Feb. 5, 1976.

Steven Guttman, Honolulu, Hawaii, for plaintiffs.

Denis C. H. Leong, Damon, Shigekane, Key & Char, Jeffrey S. Portnoy, Cades Schutte Fleming & Wright, Honolulu, Hawaii, for defendant.

## MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

DICK YIN WONG, District Judge.

*Statement of the Case:*

Plaintiffs Steven and Donna Sneed allege that they obtained a loan for $1,350 from Beneficial Finance Company of Hawaii. In exchange for the loan, the Sneeds state they agreed to pay a finance charge of $367.88 and U.C.C. filing fees of $2.00. They also paid life insurance premiums of $25.73 and "Household Cont. Insurance" premiums of $51.47. Each of these items was discounted from the Sneeds' original loan with the result that they, in effect, were loaned $911.30 in actual cash.

In addition, both Sneeds signed a promissory note for $1,350 and also agreed to put up as collateral for the loan the items indicated on a disclosure statement here at issue. From indications on the contract and disclosure statement, this loan was apparently taken to pay off through refinancing a prior loan with Beneficial.

The Sneeds apparently were unable to pay off the second loan in the prescribed 30 installments of $45.00 per month, just as they were apparently unable to pay off the first loan without a refinancing agreement, and they defaulted. They subsequently filed suit alleging various defects with the loan disclosure statement under the Truth in Lending Act and the regulations promulgated thereunder.

*Jurisdiction:*

This Court has jurisdiction under 15 U.S.C. § 1640(e),[1] and 28 U.S.C. § 1337.

---

1. "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). All references to provisions of the Act will be to the corresponding sections in Title 15 of the U.S.Code.

*Allegations:*

In the instant case, both sides assert on cross motions for summary judgment that a decision in their favor is appropriate as a matter of law. Plaintiffs, the Sneeds, allege that the Act and regulations thereunder have been violated because of deficiencies in the disclosure statement in the following respects:

1. There is a failure to disclose and describe adequately the security interest;

2. There is a failure to disclose and identify adequately the property to which the security interest attaches;

3. There is a failure to properly disclose the correct amount of the finance charge and annual percentage rate.

Defendant Beneficial Finance Company of Hawaii contrarily argues that it has fully complied with all statutory requirements.

At the outset, this Court notes that: "The Truth in Lending Act is a remedial statute designed as much as possible to permit borrowers to make informed judgments about the use of credit. To effectuate this congressional purpose requires that the Act's terms be liberally construed." *Eby v. Reb Realty and Co.,* 495 F.2d 646, 650 (9th Cir. 1974). *See also Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 363–65, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Ljepava v. M. L. S. C. Properties, Inc.,* 511 F.2d 935, 942 (9th Cir. 1975); *Kessler v. Associates Financial Service Company of Hawaii, Inc.,* 405 F.Supp. 122, 124 (D.Hawaii, 1975).

■ As part of that "informed judgment," this Court believes that the disclosure of installment credit terms mandated by the Act must be made in a manner readily understandable by the ordinary layman who, after all, is truly in unfamiliar waters often pursued by unabating financial pressures when he seeks financial assistance from loan companies which are regulated by the Act.

This Court, consequently, has taken to heart in this case the Supreme Court's words in *Mourning v. Family Publications Service, Inc.,* 411 U.S. at 377, 93 S.Ct. at 1664, that "[t]he Truth in Lending Act reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose.' By erecting a barrier between the seller and the prospective purchaser in the form of hard facts, Congress expressly sought 'to . . . avoid the uninformed use of credit.' 15 U.S.C. § 1601."

It is with this perspective then that this Court has approached the instant case, and after consideration of the briefs and arguments presented by counsel for both sides has decided to find in plaintiffs' favor.

■ Since any violation of the Act is sufficient to activate the civil remedies of § 1640, it is clear that no matter how many violations are found in one loan transaction, only one recovery can be had and thus only one violation need be shown to trigger recovery.[2] However, in the interest of judicial economy, and because this is an area in which there is little case law in this district, this Court will deal with each of the plaintiffs' grounds for relief in turn.

*Discussion:*

I. Adequate disclosure and description of the security interest.

Title 15 U.S.C. § 1639(a)(8) provides that:

(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit

---

**2.** *But see Thomas v. Myers-Dickson Furniture Company,* 479 F.2d 740 (5th Cir. 1973). In *Thomas,* the court stated: "Under the totality of the circumstances herein enumerated, we hold that as to 'open end credit accounts,' each 'periodic statement' that imposes a new 'finance charge' constitutes a separate transaction within the meaning of 15 U.S.C. § 1640(a)." *Id.* at 747.

sale nor under any open end customer credit plan shall disclose each of the following items, to the extent applicable:

.    .    .    .    .

(8) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.[3]

The security agreement at issue in this case is found on the upper right-hand corner of the loan disclosure statement. Above an enclosed box are the words: "SECURITY: The security for this loan is checked below."[4] Within the enclosed box are found a number of items. The first is a space for the date of the security agreement. Beneath the space for the date are a number of smaller boxes of which two are relevant here.

The first of these smaller boxes is prefaced by "on" and followed by "Furniture." The box immediately below is prefaced by "on" and followed by "Auto" with space provided for "Yr." and "Make." Immediately below the larger enclosed box is a paragraph which states:

If the box alongside the word "Furniture" is checked, the Security Agreement identified by the date shown hereon covers all of the consumer goods of every kind then owned or thereafter acquired by Borrowers in replacement thereof and then or there-

---

**3.** In further explication of the statutory directive, Regulation Z, at 12 C.F.R. § 226.8 states in pertinent part:

> (b) *Disclosures in sale and nonsale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed:
>
> .    .    .    .    .
>
> (5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. . . . If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

As early as *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), the Supreme Court has recognized not only the Federal Reserve Board's right as the interested agency to make rules pursuant to 15 U.S.C. § 1604 to implement the aims of Truth in Lending, but also the limits of the courts' powers to review those rules. In *Mourning* the Court stated: "The standard to be applied in determining whether the Board exceeded the authority delegated to it under the Truth in Lending Act is well established under our prior cases. Where

the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.' [Citations omitted]." *Id.* at 369, 93 S.Ct. at 1660.

Further: "That some other remedial provision might be preferable is irrelevant. We have consistently held that where reasonable minds may differ as to which of several remedial measures should be chosen, courts should defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority. [Citations omitted]." *Id.* at 371–72, 93 S.Ct. at 1662. *See infra* note 7; *Bone v. Hibernia Bank*, 493 F.2d 135, 138 (9th Cir. 1974).

**4.** Section 226.2(z) of Regulation Z states:

> "Security interest" and "security" mean any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation.

after located at the Borrowers' place of residence set forth hereon. Such security agreement secures future advances on loans made by Lender to Borrowers, at Lender's option, within five years of the date of such Security Agreement.

In the instant case, only the "Furniture" box is marked with a typewritten "x." [5]

■ Plaintiffs Sneed find fault with the description of the security interest taken by Defendant Beneficial for several reasons. First, they argue that the portion of the paragraph below the enclosed box which states "all of the consumer goods of every kind then owned or thereafter acquired by the Borrowers in replacement thereof and then or thereafter located at the Borrowers' place of residence set forth herein" gives defendant an "after acquired security interest" which is broader than that allowed under Hawaii law.

Hawaii Revised Statutes [hereinafter H.R.S.] § 490:9–204 requires all security interests to attach on consumer goods only after the debtors, here the Sneeds, have acquired rights in goods and given such rights as additional security *within ten days* after the secured party, here Beneficial, has given value.

Plaintiffs allege, consequently, that the security interest disclosed is erroneous and defective because the interest described is larger than Hawaii law actually allows. In support of this proposition, they cite as authority *Johnson v. Associates Finance, Inc.*, 369 F.Supp. 1121, 1123 (S.D.Ill.1974) and Federal Reserve Board Letter No. 829.[6]

The language of the letter cited by plaintiffs is as follows: "[t]he description of that security interest should accurately reflect the type of security interest that may be legally acquired under the appropriate state law." This Court has no quarrel with a requirement of accurate description in consonance with applicable state law.[7]

**5. SECURITY:** The security for this loan is checked below:

| Security Agreement dated | Mar 21, 1975 · | |
|---|---|---|
| on ☒ Furniture | | |
| on ☐ Auto | Yr. | Make |
| ☐ Accommod Maker | Real Estate Mortgage on | ☐ Leased Property ☐ Owned Property |

INSURANCE IS INCLUDED IF COST OR PREMIUM IS INSERTED TO THE LEFT HEREON.

If the box alongside the word "Furniture" is checked, the Security Agreement identified by the date shown hereon covers all of the consumer goods of every kind then owned or thereafter acquired by the Borrowers in replacement thereof and then or thereafter located at the Borrowers' place of residence set forth hereon. Such Security Agreement secures future advances or loans made by Lender to Borrowers, at Lender's option, within five years of the date of such Security Agreement.

6. An excerpt of the letter is found in 5 CCH Consumer Credit Guide ¶ 31,151, at 66,514 (FRB Aug. 22, 1974). The letter responded to a question as to "whether a creditor who discloses a security interest in *all* after-acquired property may rely on the description of a security interest in Exhibit E of Federal Reserve Board Publication, 'What You Ought to Know About Truth in Lending,' to provide a good defense under § 130(c) of the Truth in Lending Act as a bona fide error, when the appropriate State law only allows a creditor to acquire a security interest in consumer goods (other than accessions) when given as additional security if the debtor acquires rights in them within 10 days after the secured party gives value (UCC § 9–204)."

The letter further stated: "Certainly, it would not appear that the creditor could legally acquire a greater security interest in the debtor's property than permitted by State law merely by listing a greater security interest in the Truth in Lending disclosure statement."

7. As the Federal Reserve Board (hereinafter FRB) itself has noted in Letter No. 198: "Section 105 [¶ 3009] of the Act delegates to the Board the obligation to prescribe regulations to carry out the purposes of the Act, and that delegation of authority necessarily requires that, when necessary, the Board interpret its regulation. Accordingly, it is our position that the interpretations of Regulation Z issued by the Board are the only official interpretations." [1969–74 Transfer Binder] CCH CONSUMER CREDIT GUIDE ¶ 30,505, at 66,224 (FRB Dec. 2, 1969).

In another letter, the FRB further stated: "A staff opinion represents the informed view of the particular official responding to the in-

Defendant counters, however, by citing H.R.S. § 490:9–204(4)(b) which states:

(4) No security interest attaches under an after-acquired property clause

. . . . .

(b) To consumer goods other than accessions (section 490:9–314) *when given as additional security* unless the debtor acquires rights in them within ten days after the secured party gives value. [Emphasis added.]

Defendant argues that the security interest disclosed is in property acquired *in replacement* of the originally-secured property while the statute itself requires attachment in 10 days after the secured party gives value only where the consumer goods "are given *as additional security*" for the original loan.

While this Court must agree with defendant that the words of the statute do not expressly apply a 10-day attachment requirement to goods *in replacement* of originally secured property, it can nevertheless think of circumstances in which such close observance of the statutory language may make a mockery of the Truth in Lending Act's intent to aid the consumer.

For example, a lender may take a security interest in a household consumer good which, though operable, is commercially valueless. Nevertheless, because of the "in replacement of" language of the security interest, the lender may be able to assert a security interest in a valuable appliance bought *in replacement* of the commercially valueless one at a date long after the 10 days to which the statute alludes and long after the original loan contract is signed.

To rule that such a "replacement" consumer good would not, in effect, be additional security for the original loan, and thus not be subject to the requirements of H.R.S. § 490:9–204, would probably result in a judicial disposition that may smack of injustice. The truth-in-lending laws, at a minimum, are not to be circumvented by such a constricted view of their interrelationship with the Uniform Commercial Code. The Act, after all, is to aid and not to serve as a trap for even the most knowledgeable consumers. H.R.S. § 490:9–204 cannot be defined in the manner which defendant desires. In this case, substance must prevail over form.

However, for the reasoning found in *Kessler, supra,* this Court declines to rule that defendant is liable on this ground. Subsequent to this opinion, however, this Court will consider similar defects as being violative of Truth in Lending.

■ In dealing with adequate disclosure and description of the security interest, this Court also believes unmeritorious defendant's argument that even an overstatement of the security interest,

quiry, who is authorized by the Board to express opinions on the particular subject. While it is possible that in some instances it might not represent the position which the Board members themselves would take if they formally considered the issue, the Board considers the present informal and flexible procedure, by which members of its staff provide opinions on regulatory provisions, an essential part of its operations.

"It is the Board's view that the public is entitled to rely upon a formal staff opinion unless and until it is altered by the Board after formal consideration. Where the issue involves a statement of legal position, it may be assumed that while the question discussed has not been presented to, nor reviewed by the Board, such view is believed by the staff to be legally sound and judicially sustainable, and would be recommended by the staff for Board adoption should the matter be presented to the Board." FRB Letter No. 444, [1969–74 Transfer Binder] CCH CONSUMER CREDIT GUIDE ¶ 30,640, at 66,283 (FRB Mar. 1, 1971).

As Judge Choy said of "[i]nformal letters, issued by the staff of the Federal Reserve Board, . . . . While these letters are hardly binding on a court, they do represent an 'experience[d] and informed judgment to which courts . . . may properly resort for guidance.' [Citations omitted]." *Eby v. Reb Realty, Inc.,* 495 F.2d 646, 649–50 (9th Cir. 1974).

This Court has decided to defer to the judgment of the Board because it is deemed to be "persuasive authority" in this case. *Ljepava v. M.L.S.C. Properties, Inc.,* 511 F.2d 935, 941 (9th Cir. 1975).

assuming *arguendo* that it goes beyond that allowed by state law, should not be a violation because the lender made its credit seem *less attractive* and that the congressional intent was not to penalize a technical oversight which redounds to the detriment of the alleged violator while benefiting the consumer whom the Act protects.

While such an argument has surface appeal, a deeper analysis indicates the. inherent difficulty of asserting such a formulation. Defendant cites 12 C.F.R. § 226.6(h) as analogous support for his argument.[8] That provision, a part of the "General Disclosure Requirements" of Regulation Z, states:

> The disclosure of the amount of the finance charge or a percentage which is greater than the amount of the finance charge or percentage required to be disclosed under this part does not in itself constitute a violation of this part: *Provided*, that the overstatement is not for the purpose of circumvention or evasion of disclosure requirements.

That provision, defendant argues, goes to the heart of Truth in Lending since the provision deals specifically with finance charges and annual percentage rates. Thus, if an overstatement of these items can be condoned, then *a fortiori*, an overstatement of the security interest must also be condoned.

This Court disagrees with Defendant Beneficial on several grounds. First, Congress and the FRB in designing a consumer protection statute and regula-

tions thereunder used exceptions sparingly to alleviate only the most manifest of injustices to the lender. Hence, this Court believes such exceptions must be construed to go no further than the circumstances with which they specifically deal.[9] The section which defendant cites, therefore, should not be available to it in this case because the section specifically involves finance charges and annual percentage rates and not security agreements.

■ Also, since this Court believes that the Truth in Lending Act takes as its starting point the protection of the borrower through a highly technical system of disclosure requirements, with the burden of compliance resting upon the lender, it necessarily believes that as a general principle all ambiguities in the disclosure instrument should be construed against the lender not only as the one upon whom the burden of compliance lies, but also as the one who drafted the disclosure statement in question.

Viewing the overstatement language in light of the foregoing, it is this Court's opinion that even assuming the language cited were applicable to security interests, the further words of self-limitation in the section "that the overstatement is not for the purpose of circumvention or evasion of disclosure requirements" effectively eviscerates the exception which it purports merely to limit.[10]

To explain, since the Act and regulations thereunder are highly technical in

---

**8.** *See also* 15 U.S.C. § 1602(r) which states: "The disclosure of an amount or percentage which is greater than the amount or percentage required to be disclosed under this subchapter does not in itself constitute a violation of this subchapter."

**9.** " '[E]xceptions' not mentioned in the Act should not lightly be read into it, *Buford v. American Finance Co.*, N.D.Ga.1971, 333 F.Supp. 1243, 1247." *Thomas v. Myers-Dickson Furniture Co., supra* note 2, at 745.

**10.** In any event, Federal Reserve Board Interpretation § 226.601 of Regulation Z effectively forecloses any use of non-accidental overstate-

ment of annual percentage rates as a defense to a non-disclosure allegation. Subsection (b) states: "Section 226.5 specifies the methods which shall be employed in determining annual percentage rates. Section 226.6(h) is not intended to provide an alternative to these requirements, but is merely to provide appropriate relief to a creditor who overstates accidentally. Any disclosure of an annual percentage rate whether preprinted or otherwise which overstates the annual percentage rate determined in accordance with § 226.5 other than through inadvertence does not comply with requirements."

nature, the borrower would be severely disadvantaged were the lender to come into court stating that the exception should apply because the overstatement is not "for the purpose of circumvention or evasion of disclosure requirements." The borrower would then have the unenviable burden of delving into the motives of the lender, a task which the borrower would be ill-equipped to accomplish without extensive and costly discovery and litigation that he could ill-afford. This surely cannot be the intent of the exception.

■ If the lender is to prevail, therefore, it seems to this Court that the lender must shoulder the burden of proving the inaptness of any allegation of wrongful purpose. This is especially so where defendant seeks to imply an exception to a highly technical statute where exceptions are sparingly used. Therefore, the more reasonable construction of the "overstatement" exception, this Court believes, is that that exception applies only in those circumstances in which it is manifestly apparent that the lender has no improper motive to evade or circumvent and it is equally apparent that the overstatement was totally through clerical accident or inadvertence. Such is not the case here.[11]

The clarity of proper purpose is easier discerned where only concrete figures in black and white are involved. Such is not the case, however, where a security interest is involved. Indeed, the requirement that the property to which a security interest attaches be clearly identified, almost on its face, is aimed at *overstatement*. There would be little or no harm, for example, if security interest property is narrowly and restrictively defined even if the lender somehow seeks to gain a broader interest. Understatement of this type cannot be the evil against which the Act was aimed.

It is against the vague or overbroad or overstated security interest which may be used to deceive the borrower into giving away more than he thinks he has given away that the statute is aimed. The lender in the instant case surely cannot expect to be saved from the consequences of an unclearly described and thus overbroad description of a security interest simply because the interest can be limited by state law when it is that very unclarity of the security interest which has caused the state law to be invoked in the first place.

II. Adequate disclosure and identification of the property to which security interest attaches.

Plaintiffs urge that defendant violated the provisions of the Act by reciting in its disclosure statement two inconsistent and therefore misleading descriptions. On the upper right-hand corner of the disclosure statement, the "furniture" box is keyed as a shorthand description to the paragraph below which explains that if the furniture box is checked, the Security Interest of the lender includes "all consumer goods of every kind then owned" by the borrower.

Plaintiffs argue that such internal discrepancies on the face of the disclosure form present, at a minimum, a confusing situation for the debtor. Is the security the "furniture" or is it "all consumer

---

11. In an analogous situation, the courts have been equally parsimonious in allowing the creditor to escape the remedial provisions of the Act. For example, 15 U.S.C. § 1640(c) states: "A creditor may not be held liable in any action brought under this section for a violation of this part if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." In construing this section, the court in *Palmer v. Wilson*, 502 F.2d 860, 861 (9th Cir. 1974) stated: "The defendants' omissions and mislabeling of terms were not the result of clerical errors, which are the only violations this section was designed to excuse. (*See Ratner v. Chemical Bank New York Trust Co.* (S.D.N.Y.1971), 329 F.Supp. 270, 281–82 & n. 17.)"

In *Ratner*, Judge Frankel had observed: "The sparse legislative history on this reinforces what the language shows amply by itself— that the absolution was meant for clerical errors." 329 F.Supp. at 281.

goods of every kind"? If the security is both, then plaintiffs argue that the accurate identification requirement is not fulfilled.

This Court agrees with plaintiffs. While it recognizes that shorthand check-offs of property keyed to a further explanatory description are recognized and condoned,[12] and that in the present case a box entitled "Furniture" in tandem with the additional definition that "furniture" includes all consumer goods may be a reasonable identification and description of the property to which the security interest attaches, it believes that the better view is that both the box checked off and the descriptive paragraph must be more directly related to each other and be without propensity to cause confusion because different terminology is used.

For instance, it would have been better for the box checked off to be labeled as "consumer goods" with the explanatory paragraph expanding upon the definition of consumer goods. To further illustrate, FRB sample form "Exhibit E"[13] relied upon by defendant presents the security portion of the disclosure statement in the following manner. It allows two choices. "A" is a box which indicates that the loan is secured by a security interest; "B" a box which states that the loan is unsecured. If "A" is checked, the description of the collateral is divided into three different groups: first, Motor Vehicles, with an appropriate space for make and serial number; second, Household Goods and Appliances, with a following description to be writ-

ten in; third is "Other," with an instruction to "Describe" the collateral.

■■■ The point here is that the collateral should be clearly identified and described. In the instant case, there is much room for confusion simply because the term "furniture," a limited form of collateral security, is expanded into "all consumer goods," whatever such a term may encompass. Nevertheless, this Court does not believe that such an internal discrepancy, in itself, is here cause sufficient to find a violation of Truth in Lending Act, because there has been case law which, it could be reasonably argued, implicitly allows such discrepancies.[14] However, from the date of this decision, this Court will take a more stringent view of the use of such unclear check-off devices.[15]

■■■ Despite not finding a violation in the use of the shorthand check-off device, this Court also finds that there is a fatal deficiency in the disclosure and identification of the property to which the security interest attaches in that there is a separate automobile box which remained unchecked in the larger enclosed box.

By checking the "Furniture" box, the borrower is informed that "all" of his presently-owned "consumer goods" located at his "place of residence" are subject to the lender's security interest. Nevertheless, because the "auto" box is not checked, is the borrower to believe that his automobile is not to be used as security? Or is he to believe that an automobile falls under the heading of "consum-

---

12. *See, e. g., Doresey v. Termplan, Inc., of Georgia,* No. 19634, 4 CCH Consumer Credit Guide ¶ 98,691, at 88,279 (N.D.Ga.1974); FRB Letter No. 521, [1969–74 Transfer Binder] CCH Consumer Credit Guide ¶ 30,727, at 66,317 (FRB Aug. 26, 1971).

13. *See* Exhibit E in "What You Ought to Know About Truth in Lending," 1 CCH Consumer Credit Guide ¶ 3812, ¶ 3855, at 3577, 3660 (FRB Mar. 1969). *See also supra* note 6 and *infra* note 20.

14. *Supra* note 12.

15. Although this fact has not been pointed out in oral argument or in either party's brief, this Court notes that the explanatory paragraph beneath the "Security" box is not completed in one place. Instead, the paragraph is continued at a point several inches below where it is identified as "SECURITY (cont.)." If an explanatory paragraph is to be used, it seems to this Court that such a paragraph should be complete in one location. In the proper circumstances, a discontinuous paragraph, as found in the disclosure statement here, may well be a violation of the Act.

er goods" expressly included in the explanatory paragraph printed below the enclosed box?

This Court believes that even an interested and informed borrower would not know the answer. While a borrower can always seek a clarifying explanation from the lender, this Court does not believe that such an affirmative inquiry is required under the Act.

It is enough that a borrower could in good faith believe that either option would be the correct statement of the collateral which he has pledged. The purpose of a disclosure statement is to disclose as precisely and as accurately as possible the terms of the loan transaction. To the extent that such a statement unreasonably obscures, confuses, or overstates the requisite information, it is violative of the Truth in Lending Act.

It is immaterial whether the defendant inquired whether plaintiffs owned an automobile, or whether plaintiffs in fact owned one. It is the disclosure, not the transaction which occasioned the need for disclosure, which is at issue here. Indeed, it is because of the prospect of further litigation to ascertain the factual texture underlying the loan that this Court has declined to pursue further inquiry. It is not the purpose of the statute to force a private litigant into potentially costly litigation when that litigant's recovery is limited by statute to not more than $1,000, costs, and reasonable attorney's fees.[16]

This Court will view with a jaundiced eye any excuse presented by lenders which goes to the underlying circumstances and not simply to the appearance of the information required to be disclosed. This is especially so when, as here, the parties have informed this Court of their inability to stipulate as to the factual circumstance of the loan transaction.

In the present case, this Court holds that the disclosure statement does not fulfill the requirements of § 1639(a)(8) of the Act and § 226.8(b)(5) of Regulation Z because of the statement's unclear and ambiguous identification of the property to which the security interest attaches.

III. Proper disclosure of the correct amount of the finance charge and the annual percentage rate.

Plaintiffs allege that their copy of the disclosure statement shows a charge for insurance which charge is not included in the finance charge as required in 15 U.S.C. § 1605(b). Since the annual percentage rate must also be disclosed, and its calculation is founded upon the relationship between the finance charge and the amount financed, plaintiffs further allege a violation of § 1606.

The basis for their allegations is the lack of a written authorization for the insurance on their copy of the contract. They note that § 226.8(a) of Regulation Z states:

At the time disclosures are made, the creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made and on which the creditor is identified. All of the disclosures shall be made together on either

(1) The note or other instrument evidencing the obligation on the same side of the page and above or adjacent to the place for the customer's signature; or

(2) One side of a separate statement which identifies the transaction.

Plaintiffs further cite *Lemons v. Aetna Finance Co.*, No. 17678, 4 CCH Consumer Credit Guide ¶ 98,892, at 88, 579–580 (N.D.Ga. Sept. 18, 1973) wherein Drake, B. J., stated: [17]

---

16. 15 U.S.C. § 1640(a).

17. The *Lemons* court based its decision in part on *Philbeck v. Timmers Chevrolet, Inc.*, 361 F.Supp. 1255 (N.D.Ga.1973). That case, the *Lemons* court stated, "stands for the proposi-

tion that the customer is required to look only to one place to gain all the required information to be disclosed." As a result the *Lemons* court rejected "the Defendant's contention that the customer's signature on the authorization is not a required disclosure but only a

[T]he disclosures serve no useful purpose if they cannot be read by the Plaintiff on his copy. It is clearly the intent of the Act that all of the information required shall be shown to the Plaintiff on a single sheet of paper furnished to him before the confirmation of the transaction.

Defendant responds that 15 U.S.C. § 1605(b) requires only that insurance charges must be included in the finance charge *unless*, first, the insurance coverage is not a factor in the approval of credit, a fact which must be clearly disclosed in writing, and, second, that in order to obtain the insurance, the person being extended credit must give specific affirmative written indication of his desire to do so after written disclosure is made to him on the cost of the insurance.

Defendant observes that after written disclosure of the insurance costs was made, Plaintiff Steven R. Sneed initialed a box referring to the words, "I desire Credit Life Insurance" and signed his name directly adjacent to that statement. Directly above the fully-dated signature is the statement that "The undersigned expressly state and agree that this authorization is made voluntarily, not upon any requirement of the Lender or any of the Lender's employees and acknowledge that the taking of such insurance is entirely optional."

Defendant argues that because of the completion of the above procedures, both

requirements of § 1605(b) have been met. Moreover, it notes, the fact that plaintiff's signature and authorization are not included on his copy of the disclosure statement is beside the point since a signature is not a disclosure and, indeed, there is no obligation that a copy of the note or contract evidencing the actual substantive transaction be given the borrowing consumer.[18]

The problem with defendant's arguments is that there may be a situation in which the very fact of the signature authorizing credit life insurance may be an item required to be disclosed and thus the authorization must be present on the debtor's copy of the contract. Here, for example, there is at least confusion as to whether it is Mr. Sneed only or both Mr. and Mrs. Sneed who are the primary borrowers and insured.[19] This confusion is amplified where, as here, both Mr. and Mrs. Sneed are co-makers on the promissory note. If both are co-makers who are jointly and severally liable, but only Mr. Sneed signed the authorization, is it not possible that absent a signature or signatures authorizing insurance on their copy that the borrowers may be misinformed as to who it is that is insured? This Court thinks that this possibility does exist and that such an omission might constitute a violation of the Act and Regulation. But again this Court leaves the question open for a more developed appropriate fact situation.

requirement." *Id.* at 88,580. Since the U. S. Court of Appeals for the Fifth Circuit reversed the District Court in *Philbeck*, 499 F.2d 971 (1974), however, the precedential value of *Lemons* is, at least, somewhat eroded.

18. *See* Letter No. 106, [1969–74 Transfer Binder] CCH Consumer Credit Guide ¶ 30,466, at 66,210 (FRB Sept. 5, 1969); Letter No. 333, *id.* ¶ 30,388, at 66,179 (FRB May 25, 1970).

19. Under the heading "Name & Mailing Address of Borrower(s)" on the disclosure statement is typed: "SNEED, MR, STEVEN R, DONNA." Since there is a space farther to the right for "SPOUSE," and that space is left blank, a borrower could reasonably conclude that both Steven and Donna Sneed are borrowers.

Nevertheless, only Steven Sneed acknowledged with his signature as the "Principal Borrower" that he had received a disclosure statement. The space for the "Co-Borrower" to acknowledge receipt is left blank, although Donna Sneed acknowledged receipt as "Spouse of Borrower." The acknowledgment section is not present on the borrower's copy. Although "Regulation Z does not require a borrower to sign the disclosure statement evidencing he has received a copy," Letter No. 333, *supra* note 18, the fact that both Sneeds did so generates internal inconsistencies and leads this Court to the conclusion that confusion reigned with respect to identities of the borrowers at the time that the loan transaction was executed and a copy of the disclosure statement without the acknowledgments was given to the plaintiffs.

Finally, it does defendant little good to argue that it was in good faith compliance with the Act and Regulation Z by patterning its disclosure statement after Exhibit E of the FRB pamphlet, "What You Ought to Know About Truth in Lending," and that liability should not be imposed because of 15 U.S.C. § 1640(f).[20] Even a cursory comparison between the form of disclosure of defendant's security interest and that found on Exhibit E will reveal that defendant's form is significantly less precise and considerably more ambiguous than Exhibit E.[21]

*Conclusion:*

For the reasons cited herein, plaintiff's motion for summary judgment is granted; defendant's cross motion is correspondingly denied. So ordered.

Moreover, it is at least persuasive to this Court in this litigation that the plaintiffs have from the beginning seen themselves as co-borrowers and have held themselves out as such.

**20.** 15 U.S.C. § 1640(f) (Supp. IV, 1974) states: *Good faith compliance with rule, regulation, or interpretation of Board*

(f) No provision of this section or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board, notwithstanding that after such act or omission has occurred, such rule, regulation, or interpretation is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

Pub.L. 93–495, § 408(e) (Oct. 28, 1974) makes this provision retroactive in this case.

**21.** Thus, since there was no conformity with the FRB interpretation, it also follows that § 1640(f) is inapplicable in the present case.

With respect to the use of Exhibit E, at least two courts have found that it is no defense that a lender's form is patterned after the FRB's pamphlet, *Johnson v. Associates Finance, Inc.,* 369 F.Supp. 1121, 1123 (S.D.Ill. 1974); *Scott v. Liberty Finance Co.,* 380 F.Supp. 475 (D.Neb.1974).

The FRB has also stated in its opinion Letter No. 829, *supra* note 6, that:

As the disclaimer following Exhibit E notes, the forms in the Board's publication are not necessarily definitive or accurate for every credit transaction; and it would not be, in staff's opinion, a bona fide error to rely on the description of a hypothetical security interest in an example when drawing up forms which should accurately describe a security interest to be taken in another transaction.