ASSOCIATES FINANCE, INC., Plaintiff and Counterdefendant-Appellee, *v.* RAMON S. CEDILLO *et al.*, Defendants and Counterplaintiffs-Appellants.

Second District    No. 79-565

Opinion filed October 15, 1980.

180

Scott A. Kracen and Francis G. Mays, both of Sycamore, for appellants.

Keith L. Foster and Douglas R. Engel, both of Cliffe & Engel, of De Kalb, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Defendants and counterplaintiffs Ramon S. Cedillo and Dora N. Cedillo (hereinafter borrowers) appeal only from the denial of their counterclaim alleging violations of the Truth in Lending Act (15 U.S.C. §1601 *et seq.* (1976)) and Federal Reserve Board Regulation Z (12 C.F.R. §226.1 *et seq.*) (hereinafter the Act and Regulation Z).

The material facts are not in dispute. On May 25, 1977, borrowers entered into a loan agreement with plaintiff, Associates Finance, Inc., for the sum of $5556.73, which included a finance charge of $1388.19; at that time, borrowers also signed a loan disclosure statement and a "State Loan Statement." Defendants failed to make the monthly payments after June 2, 1978. Plaintiff filed a notice for the issuance of a writ of replevin on December 13, 1978, seeking possession of certain items of personal property of the borrowers which secured the debt. The court ordered the writ to be issued on December 28, 1978, provided that the term "etc." was deleted from the list of goods to be replevied. In their counterclaim filed on January 11, 1979, borrowers sought damages of $1000 plus costs and attorney's fees pursuant to section 1640(a) of the Consumer Protection Act, as amended (15 U.S.C. §1640(a)(1976)); it was alleged that certain disclosure requirements in the disclosure statement and the loan agreement violated section 226.8(b)(5) of Regulation Z (12 C.F.R. §226.8(b)(5)), which requires a clear identification of all the property covered by the security agreement. Plaintiff raised the one-year statute of limitations (15 U.S.C. §1640(e)(1976)) as an affirmative defense in its answer to borrowers' counterclaim. After a nonevidentiary hearing except for the documents attached to the pleadings, the trial court granted possession of

the replevied property to plaintiff and denied defendants' counterclaim. Defendants appeal from the denial of their counterclaim only.

■■ Noting first that State courts have jurisdiction to enforce the Act (15 U.S.C. §1640(e) (1976); *Lake Shore National Bank v. McCann* (1979), 78 Ill. App. 3d 580, 396 N.E.2d 1301; *Ninth Liberty Loan Corp. v. Hardy* (1977), 53 Ill. App. 3d 601), we believe that a threshold consideration is whether borrowers' counterclaim is barred by section 1640(e) of the Act; which provides that actions under section 1640(e) may be brought "within one year from the date of the occurrence of the violation." (15 U.S.C. §1640(e) (1976); *Allensworth v. Ben Franklin Savings & Loan Association* (1979), 71 Ill. App. 3d 1041, 1045, 389 N.E.2d 684.) Borrowers place great emphasis on *Wood Acceptance Co. v. King* (1974), 18 Ill. App. 3d 149, 309 N.E.2d 403, in support of their contention that the Federal statute of limitations is inapplicable to the case at bar. In that case, the plaintiff filed an action to recover a deficiency judgment allegedly due after the repossession and resale of defendant's automobile purchased under a retail installment contract. Similarly, the defendant filed a counterclaim alleging violations of the Truth in Lending Act. The court held that the counter-claim was not barred by the one-year statute of limitations contained in 15 U.S.C. §1640(e)(1976), notwithstanding the fact that the defendant ad-mitted that he did not file his counterclaim within the one-year period. The court cited section 17 of the Limitations Act (Ill. Rev. Stat. 1971, ch. 83, par. 18), providing that a defendant may plead a setoff or counter-claim barred by a statute of limitations, while held and owned by him, to any action, the cause of which was owned by the plaintiff or person under whom he claims, before such setoff or counterclaim is so barred. The court noted that its research into the congressional hearing on the enactment of the Truth in Lending Act failed to disclose the purpose behind the one-year filing period, but the court emphasized that the Act was intended to safeguard the consumer in connection with the utilization of credit and that the enforcement of the Act is accomplished largely through the institution of civil actions. For this reason, the court contin-ued, no provision was made for investigative or enforcement machinery at the Federal level, on the assumption that the civil penalty section would secure substantial compliance with the Act. It was further stated that the placement of such responsibility on the often-unknowledgeable consumer lends support for the conclusion that the penalty sought to be imposed on violators of the Act should not be circumvented *where the debtor's obligation is not stale* and the debtor raises the statute by way of a counterclaim *arising out of the same occurrence.* The court accordingly concluded that the one-year limitations period of section 1640(e) was not such an integral part of the Act as to outweigh the combined purposes of the Federal Act and *section 17 of the Illinois Limitations Act. See*

generally Annot., 36 A.L.R. Fed. 657, 668-69 (1978). See also *Public Finance Corp. v. Riddle* (1980), 83 Ill. App. 3d 417, 403 N.E.2d 1316.

Plaintiff attempts to distinguish *Wood Acceptance Co.* on the basis that its holding is expressly limited to a situation "where the debtor's obligation is not stale." (18 Ill. App. 3d 149, 151.) Plaintiff contends in the present case that borrowers' obligation has been discharged in bankruptcy and it cannot be fundamentally fair to allow a discharged debtor to pursue a claim against a creditor who is seeking nothing from him in return. Plaintiff's argument is unpersuasive. The record on appeal does not reveal whether defendants were discharged in bankruptcy. Also, the counterclaim here was brought in response to plaintiff's complaint seeking the issuance of a writ of replevin; although it is not clear from the record, apparently borrowers voluntarily returned the secured property to plaintiff pursuant to a court order entered in this case. Under such circumstances, plaintiff cannot be heard to say that defendants' obligation is stale.

Furthermore, the reasoning from other jurisdictions is persuasive. In *Lincoln First Bank v. Rupert* (1977), 60 App. Div. 2d 193, 400 N.Y.S.2d 618, the court held that counterclaims asserted by the debtor in an action to recover monies allegedly unpaid under a retail installment policy were not barred by the statute of limitations, even though they would have been time-barred if asserted as separate actions. The court perceived the basic inquiry to be whether the congressional purpose would be effectuated by tolling the statue of limitations in given circumstances. After examining the statute itself, the court concluded that its purpose is to protect the borrower so that he may be better able to compare the cost of credit, and that to do otherwise would frustrate the purpose of the Act.

■■ We believe that the rationale of *Rupert* is equally applicable here. The transaction was entered into on May 25, 1977; plaintiff filed its complaint on December 13, 1978. It is obvious that plaintiff did not commence suit until the one-year limitation period had expired. Thus to hold, as plaintiff urges, that defendants' counterclaim is time-barred would frustrate the very purpose of the Act and provide opportunity for potential abuse.

■■ In support of their counterclaim, borrowers assert that the disclosure of the terms of the Disclosure Statement and Loan Agreement were not in accordance with the requirements of the Truth in Lending Act, and more particularly with section 226.8(b)(5) of Regulation Z (12 C.F.R. §226.8(b)(5)). On appeal, borrowers urge that the disclosures in the loan agreement coupled with the disclosure statement did not provide a clear identification of the property to which the security interest relates, but instead set forth a conflicting, inaccurate and indefinite identification of such property.

The purpose of the Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." (15 U.S.C. §1601 (1976); *Smith v. Chapman* (5th Cir. 1980), 614 F. 2d 968, 971; see also *Traff v. American Finance Corp.* (1979), 77 Ill. App. 3d 889, 890, 396 N.E.2d 832.) Due to its remedial nature, the applicable standard is strict compliance with the technical provisions of the Act. (*Smith v. Chapman* (5th Cir. 1980), 614 F.2d 968, 971; *Woods v. Beneficial Finance Co.* (D. Ore. 1975), 395 F. Supp. 9, 12.) Regulation Z, section 226.8(b)(5), requires the creditor to include in his disclosure statement a description or identification of the type of security interest it acquired with the extension of credit, and a *clear identification* of the property to which the security interest relates. (*Madison v. United Finance Co.* (9th Cir. 1978), 571 F.2d 1125, 1126; *Woods v. Beneficial Finance Co.* (D. Ore. 1975), 395 F. Supp. 9, 13.) To satisfy the requirements of section 226.8(b)(5), the goods must be so clearly identified as to preclude any reasonable question regarding the particular goods to which the security interest attached. *Madison v. United Finance Co.* (9th Cir. 1978), 571 F.2d 1125, 1126; *Woods v. Beneficial Finance Co.* (D. Ore. 1975), 395 F. Supp. 9, 13-14.

Borrowers claim that the collateral has not been clearly identified. They argue that the discrepancies between the loan disclosure statement and the loan agreement present, at a minimum, a confusing situation for the debtors. First, there is the confusion generated by having two nearly identical loan documents with different categories of security. More perplexing, however, is the inconsistent use of check-off devices. For instance, the "Vehicle" box is checked on the loan disclosure statement, but marked "NA" on the loan agreement; on both documents, the identical description of the automobile follows. As the trial judge re-marked, "It doesn't make any sense to itemize and say it isn't applicable, does it? Doesn't make any sense."

In our view, the disclosures made by plaintiff's preparation of the documents do not clearly identify the type of security, much less provide "enough information to preclude any reasonable questions regarding the goods to which the security interest attaches." (*Woods v. Beneficial Finance Co.* (D. Ore. 1975), 395 F. Supp. 9, 13-14.) An argument can be made, of course, that any reasonable person could determine that the security is borrowers' Pontiac Lemans and the household goods and appliances listed on the loan agreement. While this argument has surface appeal, it fails upon deeper analysis. The point here is that the collateral should be clearly identified and described. Although the description may be adequate, there is much room for confusion simply because two documents with conflicting check-off boxes have been used. The under-

lying principle of the Act is to protect the borrower through a highly technical system of disclosure requirements. As a general rule, therefore, all ambiguities in the disclosure instrument should be construed against the lender not only as the one upon whom the burden of compliance lies, but also as the one who drafted the disclosure statement. (*Sneed v. Beneficial Finance Co.* (D. Haw. 1976), 410 F. Supp. 1135, 1142; *First Savings & Loan Association v. Kern* (1977), 55 Ill. App. 3d 838, 842, 370 N.E.2d 1326.) More importantly, the purpose of a disclosure statement is to disclose as precisely and as accurately as possible the terms of the loan transaction. To the extent that such a statement unreasonably obscures, confuses, or overstates the requisite information, it is violative of the Truth in Lending Act. (*Sneed v. Beneficial Finance Co.* (D. Haw. 1976), 410 F. Supp. 1135, 1145.) Although the *Sneed* court held that an internal discrepancy in the loan disclosure statement, in itself, was not sufficient cause to find a violation of the Act, it noted that from the date of its decision the courts would take a more stringent view of the use of unclear check-off devices. 410 F. Supp. 1135, 1144.

It is now well established that an objective standard is used in determining violations of the Act. It is not necessary that the defendants actually have been deceived in order for a violation to occur. (*Smith v. Chapman* (5th Cir. 1980), 614 F.2d 968, 971; *McGowan v. King, Inc.* (5th Cir. 1978), 569 F.2d 845, 849.) Under this standard, the basis for the trial court's decision was erroneous. The trial judge reasoned as follows:

"It would appear to me that there may be a conflict in the boxes here, but I think that by signing these they were not in the dark, so to speak. In other words, it was revealed to them what was going to be the security.

Accordingly, I don't believe it is a violation."

Admittedly, the violation in the case at bar is technical and, perhaps, slight. However, once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability for statutory penalties. *Grant v. Imperial Motors* (5th Cir. 1976), 539 F.2d 506, 510; see also *Owens v. Magee Finance Service of Bogalusa, Inc.* (E.D. La. 1979), 476 F. Supp. 758; *Corn v. Culpepper Sales* (1979), 150 Ga. App. 197, 257 S.E.2d 324.

■■ Plaintiff also contends that the loan disclosure statement satisfies the requirements. of the Act and, hence, it need not be construed together with the loan agreement. The plaintiff asserts that the loan disclosure statement was prepared to satisfy the truth in lending requirements, whereas the loan agreement was prepared to evidence the obligation of the borrower and to create a security interest. The disclosure statement here, says plaintiff, is self-contained, clear, and refers to no other

documents. In essence, plaintiff suggests that the inconsistencies of the loan agreement are irrelevant. Plaintiff also points out that nowhere in the Act or Regulation Z is there a requirement that there be perfect consistency between the loan documents.

Section 226.8(a) of Regulation Z enunciates the rule that "[a]ll of the disclosures shall be made together on either (1) [t]he note or other instrument evidencing the obligation on the same side of the page and above or adjacent to the place for the customer's signature; or (2) [o]n one side of a separate statement which identifies the transaction." (12 C.F.R. §226.8(a).) Thus, Regulation Z unequivocally requires that complete disclosure be accomplished on one side of one document without use or reference to separate documents unless a full identification of the property "cannot be properly made on the disclosure statement due to the length of such identification." See also *Bulger v. Thorp Credit Inc.* (7th Cir. 1979), 609 F.2d 1255, 1258.

A problem arises in the present case because conflicting disclosures were made on two separate documents. Admittedly, the requirements of section 226.8(a) would have been satisfied by a disclosure on either the loan agreement or loan disclosure statement. It is also conceded that the loan disclosure statement satisfies the requirements of section 226.8(b)(5). It has been repeatedly held that a broad "Household Goods" identification, as here, is sufficient to satisfy the clear identification requirement. (See *e.g., Anthony v. Community Loan & Investment Corp.* (5th Cir. 1977), 559 F.2d 1363; *In re Dickson* (W.D. N.C. 1977), 432 F. Supp. 752; *Gibson v. Family Finance Corp. of Gentilly, Inc.* (E.D. La. 1975), 404 F. Supp. 896.) However, we cannot agree that the conflicting disclosures on the loan agreement can be ignored. Both documents were attached to plaintiff's complaint, and both were presented to the trial court. Plaintiff should not now be allowed to select the appropriate document and thereby avoid this liability. We agree that no reference should be made to the loan agreement if the problem was one of inadequate description, but that is not at issue here. The purpose of the Act, providing meaningful disclosure so that consumers are able to make intelligent credit decisions, would be thwarted if the loan agreement is ignored.

Finally, we consider whether the errors in the loan agreement are "clerical errors" so as to exempt plaintiff from liability under 15 U.S.C. §1640(c) (1976). As noted earlier, once the court finds a violation, no matter how technical, it has not discretion with respect to the imposition of liability. Therefore, unless one of the defenses provided in the Act is applicable, the court must award the statutory penalty (*Grant v. Imperial Motors* (5th Cir. 1976), 539 F.2d 506, 510-11), which is an amount equal to twice the finance charge but not to exceed $1,000 plus reasonable attorney's

fees. 15 U.S.C. §1640(a) (1976); *Hinkle v. Rock Springs National Bank* (10th Cir. 1976), 538 F.2d 295, 297.

Plaintiff argues that the violations are mere typographical errors and should be excused as "bona fide errors" under 15 U.S.C. §1640(c) (1976). More specifically, plaintiff maintains that the typist merely hit "NA" rather than "XX" and included the words "etc." at the end of a list of items. To avail itself of this so-called "clerical error" defense, plaintiff must prove that the error was an unintentional, bona fide error, and second that it maintained procedures reasonably adapted to avoid any such error. (*Mirabal v. General Motors Acceptance Corp.* (7th Cir. 1976), 537 F.2d 871, 877.) Plaintiff has provided no factual evidence that marking the box "NA" rather than "XX" was a bona fide error. The statute clearly places this burden upon the plaintiff-creditor. Even assuming, arguendo, that this type of mistake is the typical clerical error at which the statute was aimed, the plaintiff has not produced any evidence or even pleaded that it has any "procedure reasonably adapted to avoid any such error." (15 U.S.C. §1640(c) (1976).) While the error committed here perhaps may be easy to commit, it is also the type of error that can be easily detected by implementation of an inexpensive screening device. Inasmuch as plaintiff has failed to prove that the mistake in question was not intentional and that it maintained a procedure reasonably adapted to correcting such errors, the clerical error defense provided in 15 U.S.C. §1640(c) (1976) is unavailable to plaintiff. See generally *Turner v. Firestone Tire & Rubber Co.* (5th Cir. 1976), 537 F.2d 1296, 1298.

Accordingly, we reverse the trial court's denial of defendants' counterclaim and remand the case for a determination of the amounts to be recovered pursuant to section 1640(a) of the Truth in Lending Act.

Reversed and remanded.

VAN DEUSEN and NASH, JJ., concur.