WILLIAM W. WARREN *et al.*, d/b/a Hickory Shores Resort, Plaintiffs and Appellants and Counterdefendants and Cross-Appellees, v. DONALD J. BORGER *et al.*, Defendants-Appellees (Eugene C. Ochs *et al.*, Counterplaintiffs and Cross-Appellants).

Fifth District   No. 5—87—0056

Opinion filed June 2, 1989.

Patrick J. Hitpas and T. Fritz Levenhagen, both of Carlyle, for appellants.

Hughie G. Craig, of Greenville, for appellees Lloyd G. Barnard and Virgil N. Thomas.

R. Edward Veltman, Jr., and David M. Foreman, both of Crain, Cooksey & Veltman, Ltd., of Centralia, for appellees Donald J. Borger, Sabra J. Borger, Melvin N. Jennings, Dorothy J. Jennings, Joe C. Hill, Darlene M. Hill, Robert W. Wilke, Dana Wilke, Bob J. Redman, Dale O. Cronkhite, Cecilia M. Cronkhite, Richard L. Steiner, Ann M. Steiner, David F. Cason, Diana G. Cason, Donald R. Cox, Patsy M. Cox, Stephen G. Mitchell, Toni E. Mitchell, Melvin L. Stacey, and Lois M. Stacey.

Richard Briles Moriarty, of Shorewood, Wisconsin, for appellees Eugene C. Ochs and Maria S. Ochs.

Michael J. Logan, of Calandrino, Logan & LaMarca, of Springfield, for appellees Donald Moor and Henry Selinger.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

In this case of first impression, we are asked to construe section 2B of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 262B). The appeal is brought by plaintiffs, William B. Warren and Halleck B. Warren, Jr., d/b/a Hickory Shores Resort, from summary judgments entered in the circuit court of Clinton County in favor of 31 different defendants in 16 different cases. Some of these cases were consolidated in the trial court; all have been consolidated for purposes of this appeal.

Also before us is a cross-appeal brought by defendants Eugene C. Ochs and Maria S. Ochs against plaintiffs, in which defendants argue that the contract of sale they entered into with plaintiffs violates the Federal Truth in Lending Act and Regulation Z thereunder. 15 U.S.C.S. §1601 et seq. (Law. Co-op. 1982).

In the latter part of the 1970's, plaintiffs developed a camping resort near Carlyle Lake known as Hickory Shores Resort. The resort is not open to the public, but is restricted to members and their guests. In order to interest potential members in the resort, plaintiffs sent direct mail solicitations addressed to selected members of the general public, including defendants herein, inviting them to visit the resort for a guided tour. The mailing notified the recipients that they have definitely won a valuable prize which they will receive, along with a free gift, when they visit the resort.

Each of the defendants herein travelled to the resort and was given a guided tour of its facilities. During the tour, the guide explained to the defendants how they could purchase memberships in the resort. After the tour, each defendant entered into a contract to purchase a membership in the resort. In each case, the membership was purchased on an installment basis. The defendants were to make various installment payments at various rates of interest.

In each of the cases, defendants did not perform their payment obligations under the contracts and plaintiffs brought suit for breach of contract. The defendants filed motions for summary judgment, arguing that the sales of the resort memberships fell within the purview of section 2B of the Illinois Consumer Fraud and Deceptive Business Prac-

tices Act. (Ill. Rev. Stat. 1979, ch. 121½, par. 262B.) That section provides that certain contracts may be rescinded by the purchaser within three business days of receipt of a "Notice of Cancellation" from the seller. As no such notices had been sent to defendants by plaintiffs, defendants sought rescission of the contracts. Plaintiffs have at all times maintained that section 2B does not apply to the sales in question.

The circuit court of Clinton County granted defendants' motions for summary judgment, finding that, although the language of section 2B is ambiguous, the sales here involved do fall within its purview. Relying on *People v. Beaulieu Realtors, Inc.* (1986), 144 Ill. App. 3d 580, 494 N.E.2d 504, the trial court found that the mailing here involved was a solicitation and not mere advertising. The court found that, to fall within the purview of section 2B, the sale must occur "as a result of or in connection with a salesman's direct contact with or call on the consumer at his residence." (Ill. Rev. Stat. 1979, ch. 121½, par. 262B.) The court further found that the unrequested direct mail solicitations to defendants at their residences constituted such a "salesman's direct contact with or call on the consumer at his residence," and that the sales occurred as "a result of, or in connection" therewith.

■ A motion for summary judgment should be granted where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. (*American Buyers Club of Mt. Vernon, Illinois, Inc. v. Zuber* (1978), 57 Ill. App. 3d 899, 900, 373 N.E.2d 786, 788.) In the instant case, there are no disputed questions of fact. Rather, the trial court was presented with a disputed question of law regarding the construction of a statute. Questions regarding the construction of a statute are properly resolved by the trial court as questions of law. (*In re Estate of Pirie* (1986), 141 Ill. App. 3d 750, 766, 492 N.E.2d 884, 894.) We may review the trial court's disposition of a question of law independently of the trial court's judgment. (*Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 320, 369 N.E.2d 525, 528.) We find that the trial court properly construed section 2B of the Consumer Fraud and Deceptive Business Practices Act and affirm the summary judgments entered in favor of defendants and against plaintiffs.

■ All of the sales contracts in issue were executed between February 2, 1980, and June 26, 1983. The statute in effect at that time provided:

> "Where merchandise having a cash sales price of $25 or more is sold or contracted to be sold *** to a consumer as a result of

or in connection with a salesman's direct contact with or call on the consumer at his residence without the consumer's soliciting the contact or call, that consumer may avoid the contract or sale by notifying the seller within 3 full business days. *** At the time the sale is made or the contract signed, the salesman shall furnish the buyer with a written receipt or contract containing a "Notice of Cancellation" informing the buyer that he may cancel the sale at any time within such 3 days. *** The 3 day period provided for in this section does not commence until the Notice of Cancellation ***." (Ill. Rev. Stat. 1979, ch. 121½, par. 262B.) The trial court found the language of section 2B to be ambiguous. We are unable to say that the language of section 2B is so clear that the trial court's finding of ambiguity is error. We may, therefore, resort to extrinsic sources to aid us in our construction of section 2B. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 279, 469 N.E.2d 167, 172.) We look first, however, to the language of the statute itself, particularly the words, "salesman's direct contact with *or* call on the consumer at his residence." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 121½, par. 262B.) Statutory terms which are not defined must be given their ordinary and popularly understood meaning. (*Lake County Board of Review v. Property Tax Appeal Board* (1988), 119 Ill. 2d 419, 423, 519 N.E.2d 459, 461.) Furthermore, terms must be given their full meaning, not the narrowest meaning of which they are susceptible. *Lake County Board of Review*, 119 Ill. 2d at 423, 519 N.E.2d at 461.

From the language of the statute, it is clear that the terms "direct contact" and "call on" are intended to have different meanings. As used in its ordinary sense, the word "or" marks an alternative indicating that the various terms which it connects are to be taken separately. (*People v. Vraniak* (1955), 5 Ill. 2d 384, 389, 125 N.E.2d 513, 517.) We think that the ordinary and popularly understood meaning of the words "call on" indicates a personal, face-to-face visit by a salesman on a consumer. It follows, then, that the words "direct contact" indicate something other than a personal face-to-face contact. To find otherwise would be to ignore the word "or." It is well settled that statutes should be construed so that no word or phrase is rendered meaningless or superfluous. (*People v. Chevalier* (1987), 159 Ill. App. 3d 341, 347, 512 N.E.2d 1001, 1005.) The question we are presented with is whether the mailings in question constitute "direct contacts" within the meaning of section 2B.

The record indicates that the mailings here involved were sent to selected members of the general public, *i.e.*, individuals who satisfied certain criteria established by plaintiffs. The mailings were personally

addressed to the consumer and received at the consumer's residence in a sealed envelope. They promised valuable prizes and gifts if the consumer would visit the plaintiffs' camping resort and take a guided tour (sales presentation).

The trial court found that these mailings constituted solicitations and not mere advertising. We agree. Advertising entails giving general notice in order to attract public attention. (*People v. Beaulieu Realtors, Inc.* (1986), 144 Ill. App. 3d 580, 585, 494 N.E.2d 504, 508.) Solicitation, on the other hand, is addressed to a particular individual and entreats that individual to do a particular thing. (*Beaulieu,* 144 Ill. App. 3d at 585, 494 N.E.2d at 508.) The mailings here involved clearly constitute solicitations rather than mere advertisements. The distinction is important because we do not believe that mere advertising constitutes a direct contact within the meaning of section 2B. Statutes are to be construed so as to avoid an absurd result. (*Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341, 504 N.E.2d 84, 86.) To construe section 2B to apply to any sale resulting from mere advertising at a consumer's residence would be absurd.

We are still left with the question whether the solicitations mailed to the defendants' residences constitute direct contacts within the meaning of section 2B. In answering this question, we look to the objective sought to be accomplished and the evils desired to be remedied by the statute. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 341, 473 N.E.2d 1313, 1315.) The purpose of the Consumer Fraud and Deceptive Business Practices Act, as stated in its preamble, is to protect consumers, borrowers and businessmen against fraud and unfair or deceptive acts or practices in the conduct of any trade or commerce. (*American Buyers Club of Mt. Vernon, Illinois, Inc. v. Honecker* (1977), 46 Ill. App. 3d 252, 255, 361 N.E.2d 1370, 1372.) The Act is to be liberally construed to effect this purpose. (Ill. Rev. Stat. 1987, ch. 121½, par. 271a.) Thus, the Act is to be utilized to the utmost degree in eradicating all forms of deceptive and unfair business practices. *Honecker,* 46 Ill. App. 3d at 257, 361 N.E.2d at 1374.

The mailings here in question were private solicitations specifically targeted to defendants in order to lure them into a circumstance where plaintiffs could further persuade them to purchase a membership in the resort. The promise of a valuable prize and gift lures consumers, who otherwise might not be interested in purchasing a membership, to the camping resort, where they must listen to a sales presentation prior to receiving their prize and gift. The consumer in such a situation is as much a captive audience as he would be in his

home with a door-to-door salesman. If not for the promise of a valuable prize and gift, many consumers would not travel to the resort. We think this situation falls within the intended purview of section 2B of the Consumer Fraud and Deceptive Business Practices Act.

For support of our construction of the statute, we look to the 1984 amendments to section 2B. The amended statute omits the word "direct" and refers to a "person's contact with or call on the consumer." The statute exempts from its purview those sales "conducted and consummated entirely by mail or telephone without any other contact between the consumer and the person or its representative prior to delivery of the goods or performance of the services." (Ill. Rev. Stat. 1987, ch. 121½, par. 262B.) A subsequent amendment is an appropriate source of discerning legislative intent and, while an amendment of an unambiguous statute indicates a purpose to change the law, no such purpose is indicated by amendment of an ambiguous statute. (*O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 271, 408 N.E.2d 204, 209.) We think the purpose of the 1984 amendments to section 2B was to clarify the ambiguity in, and refine, the original act. We further think the amendments reflect a legislative intent to include within the purview of section 2B those sales which result from a mailed solicitation. If a mailed solicitation did not constitute a contact for purposes of this statute, it would not have been necessary for the legislature to exempt from the purview of section 2B those sales which are conducted and consummated entirely by mail. Again, statutes should be construed so that no sentence, clause or word is rendered superfluous. *Jones v. Municipal Officers Electoral Board* (1983), 112 Ill. App. 3d 926, 930, 446 N.E.2d 256, 259.

Appellant asks us to review the legislative debates with respect to section 2B. The only available legislative debates concerning section 2B pertain to the 1971 and 1984 amendments thereto. In those legislative debates, section 2B is repeatedly referred to by various legislators as addressing itself to door-to-door sales, *i.e.*, sales made by salesmen who knock on consumers' doors and make face-to-face contact with the consumers in their homes. Because these legislative debates pertain to the enactment of amendments to section 2B as opposed to its original enactment, these debates cannot be accorded the weight of contemporaneous legislative history. (*Old Ben Coal Co. v. Illinois Human Rights Comm'n* (1986), 150 Ill. App. 3d 304, 307, 501 N.E.2d 920, 922.) Furthermore, statements of individual legislators made, as here, years after the legislation was passed, reflect only the viewpoints of those individuals and not necessarily the intent of the legislature as a whole when the bill was debated and passed. (*Morel v. Coronet Insurance Co.*

(1987), 117 Ill. 2d 18, 24-25, 509 N.E.2d 996, 999.) Thus, the remarks of the individual legislators have little weight in our construction of section 2B.

We find that the private solicitations mailed to defendants did constitute direct contacts by a salesman at the consumers' homes and that the sales of the resort memberships were a result of those contacts. Defendants had a statutory right to rescind those sales within three days of receipt of a notice of cancellation. The trial court properly granted summary judgment in favor of defendants and against plaintiffs on the complaints.

We turn now to defendants Ochs' cross-appeal. On April 30, 1984, defendants Eugene C. Ochs and Maria S. Ochs filed an amended counterclaim against plaintiffs, William W. Warren and Halleck B. Warren, Jr., doing business as Hickory Shores Resort. Count I of the amended counterclaim alleges that the contract for sale of a resort membership entered into between plaintiffs and defendants on October 3, 1981, violates section 1638 of the Federal Truth in Lending Act (15 U.S.C.S. §1638 (Law. Co-op. 1982)), in that it fails to clearly disclose the number, amount and due dates or period of payments scheduled to repay the total amount due. Count I prays that defendants be granted an offset against any amount awarded plaintiffs on their complaint in an amount of $1,000, which is less than twice the total of all finance charges, together with reasonable attorney fees and costs. 15 U.S.C.S. §1640 (Law. Co-op. 1982).

Specifically, defendants argue that the contract for sale does not meet the disclosure requirements of the Federal Truth in Lending Act because it contains contradictory disclosures as to the due dates or periods of payment. The contract for sale is a printed form which includes the sentence:

"The finance charge is imposed as of the date of this Contract and the first due date of the payment shown in box 7 is _____, 19____, with additional payments due the same day of each *month* thereafter ***." (Emphasis added.)

The blank is filled in with the typewritten date, October 3, 1982. Just above this printed sentence are the typewritten words "YEARLY PAYMENTS." The discrepancy arises because the printed portion calls for monthly payments, while the typewritten portion of the contract indicates that payments are to be made on a yearly basis.

Defendants also argue that the disclosure as to number and amount of payments is not clear. The contract contains a box number 7 which has printed in it the words "Amount of Payment" and a blank line preceded by a dollar sign ($). Typewritten in the box is the fol-

lowing: "8-800.00" and "1-547.17."

On October 20, 1986, plaintiffs filed a motion for summary judgment on count I of the counterclaim and a supporting memorandum, arguing that the contract is in full compliance with the Federal Act. On December 22, 1986, the circuit court of Clinton County granted plaintiffs' motion for summary judgment on count I of defendants' counterclaim. The court found that the typewritten provision for yearly payments prevails over the printed provision for monthly payments and that defendants so understood. The court found that as a matter of law the contract did not violate the Federal Truth in Lending Act.

On January 5, 1987, defendants filed a motion to vacate the summary judgment order. This motion was denied by order of court filed February 3, 1987.

In deciding plaintiffs' motion for summary judgment, the trial court was not presented with any disputed questions of fact. Rather, the trial court was presented with a question of law as to whether the contract in question complied with the Federal Truth in Lending Act. In such a case, summary judgment is properly granted where the movant is clearly entitled to judgment as a matter of law. (*Kardolrac Industries Corp. v. Wang Laboratories, Inc.* (1985), 135 Ill. App. 3d 919, 925, 482 N.E.2d 386, 391.) We may review the trial court's disposition of this question of law independently of the trial court's judgment. *Kardolrac*, 135 Ill. App. 3d at 925, 482 N.E.2d at 391.

The purpose of the Truth in Lending Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." (15 U.S.C.S. §1601 (Law. Co-op. 1982).) Strict compliance with the technical provisions of the Act is required. *Associates Finance, Inc. v. Cedillo* (1980), 89 Ill. App. 3d 179, 183, 411 N.E.2d 1194, 1198.

Section 1638 of the Act requires that in each consumer credit sale not under an open end credit plan, as here, the creditor must disclose certain items, including the number, amount and due dates or periods of payments scheduled to repay the indebtedness. (15 U.S.C.S. §1638(a)(8) (Law. Co-op. 1982).) Section 1631(a) requires that such disclosures be clearly and conspicuously made. 15 U.S.C.S. §1631(a) (Law. Co-op. 1982).

■ Defendants argue that the periods of payments were not clearly and conspicuously disclosed because of the discrepancy between the printed portion of the contract and the typewritten portion of the contract, and that the number and amounts of payments were not

clearly and conspicuously disclosed in box number 7. The trial court disagreed, as do we. The purpose of the disclosure is to disclose as precisely and accurately as possible the terms of the credit transaction. (*Warren v. Darnell* (1987), 164 Ill. App. 3d 273, 283, 517 N.E.2d 636, 642.) However, this court has held that a disclosure violates the Truth in Lending Act only to the extent that it *unreasonably* obscures, confuses or overstates the requisite information. *Warren*, 164 Ill. App. 3d at 283, 517 N.E.2d at 642.

■ We find that the number and amounts of payments are clearly and conspicuously disclosed in box number 7. We find no obscurity or confusion in this information. Admittedly, the provisions regarding the periods of payments are contradictory. However, we do not think that the discrepancy in the information, in this particular case, renders the information *unreasonably* confusing or obscure. The basis for liability under the Act is the failure to disclose information required to be disclosed. (*Warren*, 164 Ill. App. 3d at 279, 517 N.E.2d at 640.) There is no question but that plaintiffs disclosed all of the information required to be disclosed. There is, in this case, a contradiction in disclosures. However, we think it is clear from the contract that defendants were to make yearly payments on the third of October. We find no violation of the Federal Truth in Lending Act. We therefore affirm the summary judgment in favor of plaintiffs.

In their brief, defendants–cross-appellants ask that, in the event we reverse the summary judgment in favor of defendants on count II of defendants' counterclaim, we also reverse the trial court's granting of summary judgment in plaintiffs' favor on count III of defendants' counterclaim. Count II of defendants' counterclaim alleges that the sale of the resort membership was in violation of section 2B of the Consumer Fraud and Deceptive Business Practices Act, that defendants had attempted to rescind the sale pursuant to that section, but that plaintiffs had refused to return to defendants the sums defendants had already paid under the contract for sale. Count II seeks the return of these sums as well as actual and punitive damages in excess of $5,000.

Count III of defendants' counterclaim alleges that plaintiffs misrepresented to defendants that they had no right to rescind the contract for sale when, in fact, defendants had a right of rescission under the Consumer Fraud and Deceptive Business Practices Act. Count III further alleges that defendants relied on this misrepresentation to their damage in an amount in excess of $5,000. Count III seeks both actual and exemplary damages.

On October 20, 1986, plaintiffs filed a motion for summary judg-

ment on counts II and III of the counterclaim for the reason that the Consumer Fraud and Deceptive Business Practices Act did not apply to the transaction in issue. Plaintiffs argued that defendants had no right of rescission under the Consumer Fraud and Deceptive Business Practices Act.

On December 22, 1986, the trial court found that the Consumer Fraud and Deceptive Business Practices Act did apply to the transaction in question. However, the court found that nothing in the evidence before it supported defendants' prayers on counts II and III for damages in excess of $5,000, and for punitive damages. The court granted summary judgment in favor of plaintiffs on counts II and III of the counterclaim.

On January 5, 1987, defendants filed a motion to vacate the summary judgment order. On February 3, 1987, the trial court denied this motion as to count III of the counterclaim, but granted it as to count II, finding that defendants were entitled to a return of the monies they had paid pursuant to the contract for sale. The court found that defendants had made a down-payment of $995 and had made one annual payment under the contract in the amount of $800. The court entered judgment in favor of defendants and against plaintiffs in the amount of $1,795.

In their brief, plaintiffs did not ask us to reverse the summary judgment entered against them on count II of defendants' counterclaim, nor do we see any reason to do so. Summary judgment on count II is appropriate where the contract for sale is rescinded. Defendants are entitled to a return of the monies paid thereunder. As defendants have asked us to review the propriety of the summary judgment on count III of their counterclaim only if we reverse the summary judgment on count II of their counterclaim, we need not do so.

In summary, we affirm the trial court's grant of summary judgments in favor of defendants on plaintiffs' complaints. We also affirm the summary judgment in favor of plaintiffs–cross-appellees on count I of defendants–cross-appellants' counterclaim. Finally, we affirm the summary judgment in favor of defendants–cross-appellants on count II of their counterclaim.

For the foregoing reasons, the judgments of the circuit court of Clinton County are affirmed.

Affirmed.

HARRISON and RARICK, JJ., concur.